May it please the Court, Howard Ullman on behalf of Petitioner Kapstov and I would like to reserve if I may two minutes of my time. This is an immigration appeal presenting claims of asylum and withholding of removal on the basis of political opinion. The two central issues on appeal are A, whether Mr. Kapstov established and whether the record compels a conclusion that there's a sufficient likelihood that he would be persecuted were he to be returned to his native country of Russia and B, whether that persecution would be on account of at least in part political opinion. There are two subsidiary issues which I believe the briefs reveal there's no substantial disagreement about. That is Mr. Kapstov subjectively fears persecution were he to be returned to Russia and that Mr. Kapstov has a political opinion of his own, that is his opposition to the war in Chechnya and the Russian government's civilian population there, which is the reason why he deserted the army upon being assigned to Chechnya. The heart of the difficulty that I see is assuming he subjectively fears persecution. He kept it to himself that he deserted because of any opposition or any position at all on the part of the Russian government. He stayed around for five years in the area, albeit not at his parents' house, without apparent difficulty, working all the while. He got a passport and a student visa to come to the United States validly for the purpose of pursuing his education. And he came here and didn't seek asylum, but rather got a job and worked until he was apprehended. It's tough. I think the big difficulty to me, and that's why I'd like to hear you on it, is how you get to an imputation of political opinion on that scenario. Your Honor, I think there are three ways. You're correct that the record does not reveal he ever affirmatively indicated to the Russian government his political opinions. But I think as the Court is aware, there is a doctrine of imputed political opinion. And the record reveals three ways in which that opinion was imputed by the Russian government or is sufficiently likely to be imputed. The first is that Mr. Kapshov stated in his asylum application, which he swore to and which was made part of the testimony below, that the Russian government, in his words, was harassing him and his family on account of their political beliefs. Now, that statement was not rebutted below, and it was not addressed by either the immigration judge or the Board. Moreover, the Board found or accepted Mr. Kapshov as credible. So in light of his credible, unrebutted statement that the Russian government was taking action against him for his political beliefs and the political beliefs of his family, that statement alone But it's unsubstantiated by anything other than his statement in the application that his brother was arrested, which he backed off of in his testimony by saying he didn't know whether he was or wasn't. And likewise, with respect to his father, that he had a superior account of his position on the Chechen War. But then in his testimony, he failed to explain that or continue to hold that view also. Well, Your Honor, imputed political opinion can rarely be shown by documentary evidence. And the case law recognizes that an applicant for asylum can establish eligibility on the basis of his or her testimony alone. And because we have an unrebutted, credible statement that there was imputation, and this was not explored during the hearing, nor was it addressed by the immigration judge, nor by the Board, I would submit that that factor alone establishes that, in fact, the Russian government had imputed His simple statement, the Russian government harassed me and my family, is enough? By itself, Your Honor, it may not be. But in the context that it's unrebutted and the Board made an Let's assume it just stands out there. And the Board made an express credibility finding, which I would submit that that by itself would establish the imputation. But we have other factors as well that also support a view that the evidence indicates imputation. And those are, if I may, first, the treatment of Mr. Kapsov's family, specifically his father and his brother. His father was a member of the Russian police. And when he expressed his views about the war in Chechnya, he was fired from his position for that. Now, he actually, in effect, said, with respect to both his brother and his father, that he really didn't know. Isn't that the condition of his testimony, that he effectively didn't really know? In fact, his father is ill, can't work. And he backed away, he literally backed away, by saying he really didn't know much about his brother's fate. Am I wrong on that? I think, Your Honor, what the record reveals is this. In his application, he indicated that his father was fired from his position for expressing his opinion. In his testimony, he also indicated that there had been a conflict between his father and his superiors. And as a result, he was terminated. He didn't make the express link, but nor was he questioned about it either. So the testimony is consistent with the application, although it doesn't explain in as much detail as the application does. With respect to his brother, if I may, in his application, he indicated that his brother had been assigned to Chechnya, refused to obey orders to harm civilians, and for that reason was imprisoned. In his testimony, he explained that he learned about this through a phone call to Russia from the United States, and he thought he had been at the connection was not good, but he believed that he had been told that his brother had been arrested. So again, there's a consistency, although not an identity, of statements. No, there's very little responsibility for having said so under oath. Is that fair to say, as far as his testimony is concerned? He's left this so vague that, you know, anything could be consistent with what he said almost. Well, I think, Your Honor, I mean, if he had said something different or inconsistent with his application, that would be noteworthy. But I think it's also worth bearing in mind, Your Honor, he appeared pro se and through a translator who was unable to translate at least certain portions of the transcript with complete accuracy. So I think that needs to be taken into account as well. We are – would you say we should look to the testimony or look to his application? I would say both, Your Honor. I believe that they supplement each other, and the application was made part of the testimony. Thank you. Good morning. May it please the Court, I'm Jamie Dowd, and I represent the respondent, John Ashcroft, in this case. The central issue here is that Mr. Knafsoff failed to meet his burden to show that he had a well-founded fear of future persecution in Russia. Opposing counsel has talked about the imputation of a political opinion and has focused on the events that Mr. Knafsoff says happened to his father and his brother. However, the Court has pointed out that during his testimony, he said that his father had an unspecified conflict with his superiors and subsequent nervous breakdown, but he didn't show that anything that happened to his father was connected to a political opinion or that that political opinion was connected to his own political opinion. This Court has held that acts of violence against a petitioner's family may establish a well-founded fear. However, the violence has to create a pattern of persecution closely tied to the petitioner. Obviously, he never said that any – first, it's a little bit unclear as to whether or not his father's – any harm his father may have suffered was a result of his political opinion, and it's very far removed that any of that harm may have been as a result of the petitioner's political opinion. He also said that his brother may have been arrested, but later stated that he didn't know if his brother was arrested, and, in fact, he doesn't know what happened to his brother since the fall of 2000. Therefore, it's clear that he hasn't established a pattern of persecution closely tied to himself. So it would be a great leap for the Court to say that anyone could have imputed a political opinion to him based on anything that happened to his family in the past as – How about in the future? Well, there's no evidence that anything has happened to his family at any time. For him, if he were to be sent back? In terms of – well, he hasn't established, one, that he had a political opinion. One that he tested – What do you do with his statement and his application? His application is the only point where he says, I didn't want to participate in the war in Chechnya because I was opposed to the war. He actually said he just decided not to go back. The administrative record at 89 said he just said, I decided not to go back when I heard that we were going to Chechnya. I decided not to go back. He doesn't say, I decided not to go back because I didn't – I was opposed to what was going on in Chechnya. He didn't say, I decided not to go back and I told, you know, my fellow soldiers, or I told my commanding officers, or – he doesn't say anything about that. He just says, I decided not to go back. That was his actual testimony. So, therefore, he hasn't shown – he didn't testify that he left military duty because of his political opinion or for any other humanitarian reason. He just decided not to go back. So the substantial evidence supports the board's conclusion that he didn't establish that he had a political opinion. So to say that he would face future persecution based on that political opinion, well, if he never established a political opinion, then he failed to establish that he feared future persecution based on that political opinion. Additionally, the opposing counsel, I believe, was addressing what we had talked about, the father and the brother, but he was addressing the fact that he left the military because of the war in Chechnya and that he was opposed to that. As I said, he never expressed that opinion, although that is not conclusive, the fact that he did not express that opinion. It definitely supports the immigration judge and the board's finding that his conduct was not an expression of a political nature or that anyone perceived him to be politically opposed to them. Additionally, Mr. Kassoff was a deserter, the Russian military, and he also claims that if he were sent back that he would face prosecution for that desertion. However, punishment on account of desertion does not support a refugee status, just because Russia, as a sovereign nation, has a right to prosecute deserters from its military, and there's nothing to say that that prosecution would amount to persecution. He also said he didn't leave Russia in immediate fear of prosecution. He didn't leave Russia for five years after he deserted, so his claims that he feared that the Russian military would come after him or persecute him are really belied by the fact that he was there for five years. He did obtain a passport. He left, and he told the immigration judge when asked, why did you come to the United States? He said, to get an education. That was his answer. He was asked later on, were there other reasons why you came to the United States? And he said, for economic opportunity. I felt that I needed to come here and work and send money back for my family, et cetera. Well, economic reasons also don't support an asylum claim. So, one, we have he wanted an education, which is fine. However, he came to the United States and didn't enroll in school. He had a student visa, and he never pursued an education. He did actually get a job, but as I stated before, economic reasons don't support an asylum claim. It's clear that Mr. Kapshoff didn't meet his burden of proof. He didn't show that he had a political opinion. He didn't show that anybody could have imputed a political opinion to him. He didn't show that he left Russia in fear of any type of persecution. He didn't show that he would face future persecution based on a protected ground if he were sent back to Russia. What the evidence does show is that he stated he came to the United States for an education but didn't enroll in school. He said he came to the United States to pursue economic advantages here. However, that doesn't support an asylum claim. So, it's clear that he failed to meet his burden and that substantial evidence supports the Board's finding that he did not have a well-founded fear of persecution. Are there any other questions? I don't think so. Okay. Thank you. Mr. Ullman? Thank you, Your Honor. Just a few brief points. Mr. Kapshoff did indeed remain in Russia following his desertion, but under the case law, including cases such as Ramirez-Rivas and others of the Ninth Circuit, the fact that he remained in country and was able to evade the authorities there before coming to the United States does not show that he was not subject to a sufficient likelihood of being persecuted. Secondly, the Board found, and I believe it's in footnote four of the Board's opinion, that Mr. Kapshoff's primary motive or primary reason for seeking the relief that he requests is his fear, subjective fear of persecution. So, although he did express other motives below, the primary motive is fear of persecution. And under Garcia-Ramos and other cases, the court looks to the primary motive as being sufficient. And finally, Your Honor, I would suggest that this is not simply a case of a deserter whom the Russian government would have a right to prosecute, but it is a case of someone who testified credibly that the Russian government had imputed a political opinion to him. And in addition, with the family evidence, his treatment, the treatment of his family for expressing their political beliefs, this raises the inference that were he returned, he would be retaliated against for his political opinion. So we do request a reversal of the Board's decision below. Thank you. All right. Thank both counsel for the argument in this case. And on behalf of the whole Court, I would like to acknowledge Mr. Ullman's participation in the pro bono program and express our appreciation to the OREC firm for allowing that participation. The matter just argued will be submitted.
judges: Leavy, Rymer, Paez